**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUNTCO PAWN HOLDINGS, LLC,
D/B/A PAWN KING
13002 Butler Crest Drive
St. Louis, MO 63128

Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE
1400 Defense Pentagon
Washington, D.C. 20301-1400

ASHTON B. CARTER,
in his official capacity as Secretary of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

Defendants.

Civ. No. ____________________

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Huntco Pawn Holdings, LLC, d/b/a Pawn King ("Huntco"), hereby alleges, by and through its attorneys, as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief against the U.S. Department of Defense ("DoD") and the Secretary of Defense ("Secretary Carter") seeking judicial review of a final rule entitled "Limitations on Terms of Consumer Credit Extended to Service Members and Dependents," 80 Fed. Reg. 43560 (July 22, 2015) ("Final Rule") (attached hereto as **Exhibit 1**). The Final Rule in relevant part amends regulations implementing the Military Lending Act, 10 U.S.C. § 987 ("MLA"), by for the first time making pawn businesses, including those operated by Plaintiff, subject to the MLA while simultaneously supplanting the MLA's previous safe harbor provision in a manner that would be economically ruinous for small

pawn businesses, in contravention of DoD's obligation under the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 604, to adopt reasonable measures to accommodate small business.

2. The MLA limits the amount of fees and interest that a lender may charge an active duty service member or dependents of such a service member ("covered borrowers") on certain types of consumer credit. Pawn businesses were not previously subject to the MLA restrictions. Beginning on October 3, 2016, the Final Rule would subject pawn businesses to significant civil and criminal liability if they make a pawn loan to a covered borrower at a rate in excess of the statutory maximum.

3. Under the Final Rule, pawn businesses that confirm that an applicant is not a covered borrower by checking a DoD database of service members and their dependents, called the "MLA Database" in the Final Rule and so called herein, or obtaining such information through a nationwide consumer reporting agency would be entitled to a safe harbor from civil and criminal liability under the MLA. The Final Rule specifies no other safe harbor that would allow a pawnbroker to avoid an inadvertent violation.

4. Huntco would be harmed by the unprecedented and burdensome data collection and data use requirements that the Final Rule would impose on small pawn businesses seeking to operate in compliance with the MLA, including the costs of securing computer access, conducting covered borrower verifications by manually searching the MLA database, and documenting and storing evidence of covered borrower searches.

5. Where the previous safe harbor allowed lenders to rely on a loan applicant's written and signed self-certification under penalty of law that he or she is not a covered borrower, lenders wishing to avail themselves of the new safe harbor would instead be required to collect each applicant's Social Security number and use it to verify the applicant's

military status through the MLA Database or through a nationwide consumer reporting agency. This requires access to a computer, which many small pawn shops lack.

6. Although the comments of the National Pawnbroker's Association ("NPA"), of which Huntco is a member, explained in detail many differences between pawn and other forms of consumer credit transactions (NPA Comment at 1-6 (Nov. 24, 2014)), DoD failed to acknowledge how pawn is different from other forms of consumer credit, and did not even include pawn separately on the list of "affected businesses" that it was regulating.

7. Pawn is very different from other forms of consumer lending, among other reasons because:

* Pawn loans are non-recourse. The borrower has no obligation to pay back the loan. Therefore, pawn is a simple transaction that does not require an elaborate application.

* Pawn does not depend upon—or adversely affect—a borrower's creditworthiness. Therefore, historically pawn has been an important source of liquidity from "equal-opportunity lenders, providing small short-term loans to those—often women, minorities and the working poor—who have lacked access to forms of credit available to the elite." Wendy Woloson, *A Brief History of the American Pawn Shop*, BloombergView (Feb. 9, 2012).

* Modern scholarship in behavioral law and economics, including by Professor Susan Payne Carter of the U.S. Military Academy, recognizes that pawn transactions are NOT vulnerable to many of the psychological factors that may lead consumers to misuse other forms of credit.

> We view pawnshops as a potentially attractive alternative to other forms of high interest credit. Pawnshops offer simple

> transactions in which anyone can participate. No credit is needed and no credit check is conducted. Interest rates on pawnshop loans are lower than those associated with many other types of credit, even mainstream credit. The combination of the existing regulations on interest rates and what appears to be consumers' self-governing repayment behavior or "self-regulation" seems to work well in this market. While we cannot say for sure what behavioral factors are at play, repayment rates on pawnshop loans, particularly those secured by sentimental items, are high. Some combination of sentimentality, loss aversion, and discounting seems to help borrowers make good on their pledges.

Susan Payne Carter & Paige Marta Skiba, *Pawnshops, Behavioral Economics, And Self-Regulation* 32 REVIEW OF BANKING AND FINANCIAL LAW 193, 217 (2012-13).

8. Due to these profound differences between pawn and other forms of consumer credit, which DoD did not address in the Final Rule, the Consumer Financial Protection Bureau ("CFPB"), which is more expert than DoD on the subject of consumer lending, has proposed to exempt pawn from requirements that apply to other consumer loans. CFPB, Notice of Proposed Rulemaking, "Payday, Vehicle Title, and Certain High-Cost Installment Loans" (June 1, 2016), available at http://www.consumerfinance.gov/policy-compliance/rulemaking/rules-under-development/notice-proposed-rulemaking-payday-vehicle-title-and-certain-high-cost-installment-loans/ *forthcoming* 81 Federal Register.

9. In issuing the Final Rule, DoD failed to consider adequately the effects that revoking the previous safe harbor would have on small pawn businesses once they had to comply with the MLA, as required by the RFA, 5 U.S.C. § 601 *et seq.*, as amended by the Small Business Regulatory Enforcement Fairness Act of 1996, P.L. 104-121 ("SBREFA"). Among other things, DoD disregarded longstanding differences between the pawn industry—which is comprised largely of small businesses that do not collect Social Security numbers, often lack computer access, and engage in a much higher volume of transactions than other providers of

financial services—and more technologically sophisticated lenders offering consumer loans on the basis of a credit check. DoD lacks substantial evidence in the record to support its speculation that the previous safe harbor of obtaining from the borrower a written and signed self-certification under penalty of law would be ineffective because significant numbers of service members would lie to obtain loans. Nor has DoD made available any data on which it relied for that speculation. Moreover, the DoD's certification that the Final Rule is not subject to the RFA ("the RFA Certification") was not supported by the record, and ignored the comments of the Small Business Administration ("SBA"), the expert agency charged with protecting small business.

10. This Complaint challenges (1) DoD's failure to comply with the RFA, and (2) the arbitrary and capricious nature of the Final Rule, especially as it applies to pawnbrokers. Huntco seeks an order from this Court declaring unlawful, vacating, and enjoining implementation of the Final Rule insofar as it applies to pawn businesses. In the alternative, Huntco seeks an order declaring unlawful, vacating, and enjoining implementation of the Final Rule's revocation of the previous safe harbor, insofar as it applies to pawn businesses, prior to such time as DoD adequately considers the economic impact of the Final Rule on small pawn businesses and provides notice and comment on its unsupported assertions about the propensity of members of the U.S. military to lie about their military status to obtain credit from pawn businesses.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

12. This Court has personal jurisdiction over each of the Defendants.

13. There exists an actual and justiciable controversy between Plaintiff and Defendants requiring resolution by this Court.

14. Plaintiff's administrative remedies have been exhausted before DoD. Deficiencies in the Final Rule's conclusions with respect to the RFA and with respect to application of the rule to pawnbrokers more generally were raised during the period for public comment on the proposed version of the rulemaking at issue, 79 Fed. Reg. 58602 (Sept. 29, 2014) ("Proposed Rule").

15. The Final Rule and the accompanying RFA analysis constitute final agency action within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).

## PARTIES

17. Plaintiff Huntco Pawn Holdings, LLC, d/b/a Pawn King, is a limited liability company that operates fifteen pawnshops in Illinois, Iowa, and Missouri. Plaintiff's pawnshops offer pawn loans and sell pre-owned merchandise at bargain prices. Because it has less than $38.5 million in annual receipts, Huntco is a small entity within the meaning of the RFA. The Final Rule incorporates the SBA's Small Business Size Standards. *See* 80 Fed. Reg. 43560, 43604.

18. Plaintiff has standing because it is a "small entity" within the meaning of the RFA, 5 U.S.C. § 611(a)(3)(A), and would be irreparably harmed as a result of Defendants' revocation of the previous safe harbor and application of the Final Rule to pawn businesses.

19. Defendant U.S. Department of Defense issued the regulations at issue in this case. Defendant Ashton B. Carter is Secretary of the U.S. Department of Defense and is named here in his official capacity as Secretary of Defense. At all times relevant to this Complaint, Secretary Carter was acting as an employee and agent of the United States. In that

capacity, Secretary Carter is responsible for promulgating, implementing, and enforcing the policies and regulations related to the MLA, and for ensuring the legality of such policies and regulations. *See* 10 U.S.C. § 987(h).

20. Secretary Carter conducts a significant portion of his official duties at the Pentagon and other sites in Washington, D.C.

## FACTS

A. MLA Regulatory Framework Prior to the Final Rule

21. The MLA limits what lenders may charge in fees and interest on consumer loans to covered borrowers. Prior to the effective date of the Final Rule, the pawn industry—including small pawn businesses like those operated by Plaintiff—did not fall within the regulatory scope of the MLA.

22. According to the CFPB, pawn loans provide consumers with quick access to "liquidity," similar to a credit card, overdraft or installment loan. The difference, however, is that with a pawn loan, the consumer has the option to either repay the loan or permit the pawnbroker to retain the collateral, relieving the borrower from any additional financial obligation. According to the CFPB, "[t]his feature distinguishes pawn loans from most other types of liquidity loans." CFPB, Notice of Proposed Rulemaking, "Payday, Vehicle Title, and Certain High-Cost Installment Loans" at 12-13 (June 1, 2016). According to the CFPB, because consumers are required to relinquish control of the pawned item prior to obtaining the loan, they "may be more likely to understand and appreciate the risks associated with physically turning over an item to the lender." *Id.* at 198. Moreover, unlike a traditional secured loan—such as an auto loan where a consumer's means of transportation serves as collateral—"the loss of a nonrecourse pawned item . . . is less likely to affect the rest of the consumer's finances," because the consumer does not depend on the collateral for transportation to work or generation of

income. *Id.* All of these factors led the CFPB to conclude that pawn loans "differ significantly" from other types of credit, and the CFPB therefore excluded pawn loans from its recent proposed rule regarding payday, installment and auto title loans. *Id.* at 199.

23. The previous regulation implementing the MLA provided a safe harbor from liability for a lender who offered a covered loan to a covered borrower if the lender met certain requirements and the borrower had provided a prescribed self-certification under penalty of law:

> (a) This part shall not apply to a consumer credit transaction if the conditions described in paragraphs (a)(1) and (a)(2) of this section are met:
>
> > (1) Prior to becoming obligated on the transaction, each applicant is provided with a clear and conspicuous "covered borrower identification statement" substantially similar to the following statement and each applicant signs the statement indicating that he or she is or is not a covered borrower:
>
> Federal law provides important protections to active duty members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to sign one of the following statements as applicable:
>
> I AM a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer.
> I AM a dependent of a member of the Armed Forces on active duty as described above, because I am the member's spouse, the member's child under the age of eighteen years old, or I am an individual for whom the member provided more than one-half of my financial support for 180 days immediately preceding today's date.
> —OR—
> I AM NOT a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer (or a dependent of such a member).
>
> Warning: It is important to fill out this form accurately. Knowingly making a false statement on a credit application is a crime.

> (2) The creditor has not determined, pursuant to the optional verification procedures in paragraphs (b) or (c) of this section, that any such applicant is a covered borrower.
>
> (b) The creditor may, but is not required to, verify the status of an applicant as a covered borrower by requesting the applicant to provide a current (previous month) military leave and earning statement, or a military identification card (DD Form 2 for members, DD Form 1173 for dependents), as described in DoD Instruction 1003.1, *Identification (ID) Cards for Members of the Uniformed Services, Their Dependents, and Other Eligible Individuals*, December 5, 1997. Upon such request, activated members of the National Guard or Reserves shall also provide a copy of the military orders calling the covered member to military service and any orders further extending military service.
>
> (c) The creditor may, but is not required to, verify the status of an applicant as a covered borrower by accessing the information available at *http://www.dmdc.osd.mil/mla/owa/home*. Searches require the service member's full name, Social Security number, and date of birth.

32 C.F.R. 232.5 (2015).

B. MLA Regulatory Framework Under the Final Rule

24. The Final Rule would extend the MLA restrictions to pawn businesses, including those operated by Plaintiff.

25. In addition, the Final Rule would revoke the prior safe harbor, replacing it with a more costly and time-consuming mechanism. Under this new mechanism, a lender wishing to avail itself of the safe harbor must "use information obtained from the MLA Database or information contained in a consumer report from a nationwide consumer reporting agency to assess the status of a consumer applicant for consumer credit . . . ." 80 Fed. Reg. 43560, 43564.

26. DoD has acknowledged that a search of the MLA Database "requires the entry of the consumer's last name, date of birth, and Social Security number." 80 Fed. Reg. 43560, 43609.

27. Pawnbrokers do not currently obtain consumer reports from a nationwide consumer reporting agency. It is unclear whether pawnbrokers will be able to do so in the future.

28. There is no data in the record indicating that the previous safe harbor has been inadequate to accomplish MLA's goals of "protecti[ng] . . . Service members and their families," 80 Fed. Reg. 43560, 43560, from predatory lending practices. DoD stated that it was revoking the previous safe harbor because it was "aware" of "misuses of the covered borrower identification statement whereby a service member (or covered dependent) falsely declares that he or she is not a covered borrower." 80 Fed. Reg. 43560, 43560. DoD provided no data to support the statement that service members would lie, nor did it make any such data available for comment. *See* 80 Fed. Reg. 43560, 43560.

29. In order to benefit from the new safe harbor, a pawnbroker would need to purchase and configure software, hardware and telecommunications necessary to communicate with the MLA Database, retrieve a certificate from the MLA Database, and download and retain a record of the MLA Database response with respect to each and every pawn transaction, dozens of times each day. In addition, a pawnbroker would need to develop the compliance management systems—including policies and procedures, training, monitoring, document retention and internal audit—to ensure compliance with the safe harbor requirements. *See* 80 Fed. Reg. 43560, 43605. Alternatively, a pawnbroker would need to obtain information on "covered borrower" status from a nationwide consumer reporting agency. Both of these alternatives would impose a serious burden on pawn businesses, particularly small pawnbrokers.

30. As the rulemaking record reflects, many pawnbrokers and pawn locations do not even have access to computers, much less to the sophisticated technical, procedural and administrative systems that will be required to comply with the Final Rule. *See* 80 Fed. Reg. 43560, 43605.

31. It is unclear whether pawnbrokers will be able even to access information from consumer reporting agencies. There are three recognized "nationwide consumer reporting agencies"—Trans Union, Equifax, and Experian. Pawn businesses do not currently obtain reports from the nationwide consumer reporting agencies, which have heretofore not served the pawn industry. There is no guarantee that pawn businesses will be able to obtain reports from nationwide consumer reporting agencies in the future. Even were the nationwide consumer reporting agencies willing and able to serve pawnbrokers, the costs of building and integrating the necessary systems, and the cost of purchasing individual reports for dozens of pawn transactions per day, may be prohibitive in the context of a pawn transaction, which can be for as little as $20 or $30. In any event, the three nationwide consumer reporting agencies do not currently offer *any* of their users a product that would allow the users to avail themselves of the safe harbor requirements, and less than three months remain until the prior safe harbor of obtaining from borrowers a written and signed self-certification under penalty of law becomes unavailable.

32. The only realistic avenue for pawn businesses to assure compliance with the MLA under the Final Rule would require a pawnbroker at least to collect each applicant's Social Security number, secure computer access, and manually enter the information into the MLA Database. One commenter estimated that this process would take ''about five to 10 minutes per loan application," 80 Fed. Reg. 43560, 43605 n.359, which would create a cumulative burden when, as the NPA noted, "the volume of loans entered into in one day would number from 50-250." NPA Comment at 15 (Nov. 24, 2014).

C. The Requirement to Assess Impacts of the Final Rule on Small Pawn Businesses

33. The RFA provides that an agency promulgating a final rule "shall prepare a final regulatory flexibility analysis," which must include, inter alia,

> (2) a statement of the significant issues raised by the public comments in response to the initial regulatory flexibility analysis, a statement of the assessment of the agency of such issues, and a statement of any changes made in the proposed rule as a result of such comments;
>
> (3) the response of the agency to any comments filed by the Chief Counsel for Advocacy of the Small Business Administration in response to the proposed rule, and a detailed statement of any change made to the proposed rule in the final rule as a result of the comments;
>
> (4) a description of and an estimate of the number of small entities to which the rule will apply or an explanation of why no such estimate is available;
>
> * * *
>
> (6) a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected. . . .

5 U.S.C. § 604(a).

34. An RFA analysis is not required in the case of a proposed or final rulemaking "if the head of the agency certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b).

35. In issuing the Final Rule, DoD certified pursuant to 5 U.S.C. § 605(b) that the Final Rule is not subject to the RFA "because the regulation, if adopted as proposed, would not have a significant economic impact on a substantial number of small entities." 80 Fed. Reg. 43560, 43604. DoD concluded that—though there appeared to be a "large percentage of small business entities in each affected class of business"—the Final Rule would not "have a significant economic impact on a substantial number of small businesses because . . . small businesses nonetheless have very few customers who are covered borrowers." 80 Fed. Reg. 43560, 43606. DoD stated that

> While a substantial portion of firms in each affected market are ''small business entities,'' Service members and their dependents make up only a small portion of the consumers for those businesses. *Because only approximately 2.5 percent of households in the United States include an active duty Service member, the interest-rate limit and other MLA conditions of the final rule would affect a small percentage of the consumers served by entities that could be creditors covered by this final rule.*

80 Fed. Reg. 43560, 43605 (emphasis added).

36. In concluding that the impact on small entities would be small, DoD failed to consider that businesses would have to screen 100% of applicants to identify which 2.5% of them are "covered borrowers," despite the fact that SBA, the expert agency charged with enforcing the SBREFA amendments to the RFA, had raised this point in its comments on the Proposed Rule. *See* SBA Comment at 3 (Dec. 18, 2014) ("DoD has underestimated the number of entities that may be impacted by this proposal. . . . In order to benefit from the safe harbor, a business . . . would need to check every applicant, not just members of the military and their dependents.") (attached hereto as **Exhibit 2**).

37. Moreover, in concluding that the Final Rule would not have a significant impact on a substantial number of small entities because "only approximately 2.5 percent of households in the United States include an active duty Service member," DoD failed to consider the economic burdens that the Final Rule would impose on relevant industry segments, including small pawn businesses in towns without a large military presence and small pawn businesses in towns with a large military presence, relying instead on aggregate national data to support its conclusions.

38. In concluding that the Final Rule would not significantly impact a substantial number of small entities, DoD likewise failed to consider the loss of clients who,

though not covered borrowers, may refuse to provide their Social Security numbers for a non-recourse loan.

D. The RFA Certification

39. In certifying that the Final Rule "would not . . . have a significant economic impact on a substantial number of small entities," 80 Fed. Reg. 43560, 43604, DoD failed to consider adequately the burdens that the Final Rule would impose on pawn businesses, many of which are small entities, and failed to consider less burdensome alternatives that would achieve the same objectives, as required by 5 U.S.C. § 604.

40. DoD failed to include the North American Industry Classification System ("NAICS") code associated with pawn businesses on the list of "affected businesses" that it considered in making the RFA Certification. 80 Fed. Reg. 43560, 43604 (omitting 522298, the NAICS code for pawnbrokers).

41. During the notice and comment period NPA, of which Plaintiff is a member, raised concerns with respect to the burden that the Final Rule would impose on pawn businesses. SBA raised issues related to DoD's compliance with RFA requirements during the rulemaking process.

42. DoD only briefly mentioned and did not provide any substantive discussion of the significant economic concerns raised in one of NPA's comments on the Proposed Rule, merely "recogniz[ing] that certain costs"—including costs of purchasing computers incurred by "as many as 4,000 pawn stores" that do not currently have them—may be particular to certain market sectors, 80 Fed. Reg. 43560, 43605.

## COUNT 1

## ADMINISTRATIVE PROCEDURE ACT; ARBITRARY AND CAPRICIOUS AGENCY ACTION

43. Plaintiff hereby incorporates and re-alleges paragraphs 1-42 as if fully set forth herein.

44. By revoking the previous safe harbor and certifying that the Final Rule "would not . . . have a significant economic impact on a substantial number of small entities," Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion, *see* 5 U.S.C. § 706(2)(A).

45. The portions of the Final Rule revoking the previous safe harbor are based on arbitrary and inaccurate assumptions, for at least the following reasons: (a) DoD offered no basis for its arbitrary conclusion that the previous safe harbor must be revoked in order to eliminate "misuses of the covered borrower identification statement" involving misrepresentations by service members or their dependents that they are not subject to the MLA; (b) While DoD asserted that it is "aware of" such misuses, it offered no data concerning their supposed frequency, and therefore failed to afford the public an opportunity to comment on the basis for its conclusion.

46. The portions of the Final Rule certifying that the rulemaking "would not . . . have a significant economic impact on a substantial number of small entities," are based on arbitrary and inaccurate assumptions, for at least the following reasons: (a) DoD failed to include pawn businesses among the "affected businesses" considered in connection with its RFA Certification; (b) DoD failed to consider that pawn businesses must screen 100% of applicants to identify which 2.5% of applicants are "covered borrowers."

**COUNT 2**

**VIOLATION OF THE REGULATORY FLEXIBILITY ACT, 5 U.S.C. § 601 *et seq.***

47. Plaintiff hereby incorporates and re-alleges paragraphs 1-46 as if fully set forth herein.

48. The RFA specifically creates an obligation for all agencies to consider accommodations to reduce or avoid harm to small business. *See* 5 U.S.C. § 604. DoD improperly avoided its statutory obligation to consider ways to accommodate small pawn businesses like plaintiff Huntco by asserting in the Final Rule that the rulemaking "would not . . . have a significant economic impact on a substantial number of small entities."

49. DoD's attempt to excuse itself from its statutory obligation to "minimize the significant economic impact on small entities", U.S.C. § 604, violates the RFA for at least the following reasons:

(a) DoD failed to show that it considered the potential impacts that the Final Rule would have on small pawn businesses.

(b) DoD failed to consider that pawn businesses must screen 100% of applicants to identify which 2.5% of applicants are "covered borrowers."

(c) DoD failed to consider the economic burdens that the Final Rule would impose on relevant industry segments, as required by the RFA, including small pawn businesses in towns without a large military presence and small pawn businesses in towns with a large military presence, relying instead on aggregate national data to support its conclusions.

## COUNT 3

## ADMINISTRATIVE PROCEDURE ACT; FAILURE TO OBSERVE PROCEDURE REQUIRED BY LAW

50. Plaintiff hereby incorporates and re-alleges paragraphs 1-49 as if fully set forth herein.

51. The MLA invests the Secretary of Defense with authority to "prescribe regulations" under the Act, 10 U.S.C. § 987(h)(1), and the Under Secretary for Defense for Personnel and Readiness ("Under Secretary") is authorized to "perform such duties and exercise such powers as the Secretary of Defense may prescribe in the areas of . . . military and civilian family matters," 10 U.S.C. § 136(b). Upon information and belief, after due inquiry with the Office of the Federal Register, the Final Rule was signed by neither the Secretary of Defense nor the Under Secretary nor any other authorized Officer of the United States. *See* 80 Fed. Reg. 43560, 43560.

52. The name Patricia L. Toppings, OSD Federal Register Liaison Officer, Department of Defense, appears at the bottom of the publication in the Federal Register, 80 Fed. Reg. 43560, 43612.

53. On information and belief, Ms. Toppings' signature merely authorized publication in the Federal Register but did not issue the rule.

54. The "Final Rule" published in the Federal Register, 80 Fed. Reg. 43560 (July 22, 2015), was not properly issued and is in excess of authority and without observance of procedure required by law, *see* 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

1. A declaration that the Final Rule is arbitrary, capricious, and an abuse of discretion to the extent that it applies to pawn businesses.

2. A declaration that in promulgating the Final Rule DoD has violated the RFA and APA and failed to observe procedure required by law.

3. A preliminary injunction barring Defendants from enforcing or applying the Final Rule against pawn businesses until such time as DoD adequately considers the economic impact of the Final Rule on small pawn businesses, and otherwise complies with its obligations under the RFA and APA.

4. A permanent injunction barring Defendants from enforcing or applying those portions of the Final Rule that would impose burdensome processing restrictions on pawn businesses without providing a workable safe harbor for such businesses.

5. A declaration that the Final Rule was not properly issued by an officer authorized to do so.

6. Reasonable attorney's fees and allowable costs of court; and

7. Such other relief as this Court deems appropriate.

Respectfully submitted,

Edwin Donald Elliott

Edwin Donald Elliott (D.C. Bar No. 912766)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000 (Telephone)
(202) 662-6291 (Fax)
*Attorney for Plaintiff*

July 12, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July, 2016, I caused copies of the foregoing Complaint to be sent by the following methods to:

Ashton B. Carter (by certified mail)
Secretary of Defense
Office of the Secretary of Defense
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C. 20301

Jennifer M. O'Connor (by certified mail)
General Counsel
Office of the General Counsel
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C. 20301

Loretta E. Lynch (by certified mail)
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Channing D. Phillips (by certified mail)
United States Attorney for the District of Columbia
DC/Civil Process Clerk
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

Edwin Donald Elliott
Edwin Donald Elliott